**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRAD DYSON, individually and on behalf of those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES,<br><br>Defendant. | Civil Case No: 23-cv-723<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Brad Dyson, by and through his undersigned counsel, on behalf of himself and those similarly situated, hereby brings this class action against Defendant and alleges as follows:

**NATURE OF THE ACTION**

1. This is a putative consumer class action brought under Rule 23 of the Federal Rules of Civil Procedure by Plaintiff Brad Dyson, on behalf of himself and all others similarly situated against Defendant PHH Mortgage Corporation (hereinafter referred to as "PHH" or "Defendant") seeking damages and injunctive relief to redress the unfair and deceptive practices committed by PHH in connection with its home mortgage loan servicing business. PHH is the ninth largest non-bank residential mortgage servicer in the United States. PHH services home loans according to uniform practices designed to maximize fees assessed on consumers' accounts.

**PARTIES JURISDICTION AND VENUE**

2. Plaintiff Brad Dyson (hereinafter referred to as "Plaintiff") is an individual citizen of the State of Arizona, residing in Maricopa County. Plaintiff Dyson is the Successor in Interest to Susan Booth, his mother. At all times material, Susan Booth was the mortgagor/borrower of a federally regulated consumer loan for real property located in Maricopa County, Arizona.

1

3.     Defendant PHH is a New Jersey corporation with its principal place of business located in Mt. Laurel, New Jersey.

4.     PHH is a "servicer" as defined by the Truth in Lending Act ("TILA") and Regulation X as implemented by 12 U.S.C. § 2601, *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"). *See* 15 U.S.C. § 1602(g); 12 C.F.R. 1024.2(b).

5.     PHH was the servicer of Plaintiff's mortgage loans as alleged herein.

## JURISDICTION AND VENUE

6.     This Court has general diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the Plaintiff and the Defendant. This Court also has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d). CAFA's requirements are satisfied in that (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of the Defendant; and (3) the matter in controversy, after aggregating the claims of the proposed Class members, exceeds $5,000,000.00, exclusive of interest and costs.

7.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of TILA, a federal statute. The Court also has supplemental jurisdiction over the New Jersey NJCF, N.J. Stat. § 56:8-2 and claims under 28 U.S.C. § 1367, because these claims are so related to the federal TILA claim that they form part of the same case or controversy under Article III of the United States Constitution.

8.     Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is subject to jurisdiction and regularly conducts business in this District.

## LEGAL FRAMEWORK APPLICABLE TO THE CLAIMS

## TILA AND REGULATION Z STATUTORY STRUCTURE

9. The purpose of TILA is, among other things, "to protect the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C. § 1601(a).

10. As TILA is a consumer protection statute, it must be construed liberally and broadly in order to best serve Congressional intent.

11. Those bound by TILA, and its implementing regulations, are obligated to discharge their obligations with absolute compliance.

12. A "servicer," as pertinent here, is:

> a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan). Servicing means receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan, including amounts for escrow accounts under section 10 of RESPA [Real Estate Settlement Procedures Act] (12 U.S.C. 2609),
>
> . . . and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract.

12 CFR § 1024.2(b).

13. A consumer's need to be fairly apprised of his rights under a credit agreement is most acute when a lender maintains a security interest over that borrower's residence. It is against this backdrop that Congress empowered the Board of Governors of the Federal Reserve System (the "Board") to "prohibit acts or practices in connection with . . . mortgage loans that [it] finds to be unfair, deceptive, or designed to evade the provisions of this section[.]" 15 U.S.C. § 1639.

14. In connection with this authority, and in its effort to curb "abusive servicing practices[,]" the Board in 2008 proposed regulations prohibiting loan servicers "from failing to provide, within a reasonable time after receiving a request from the consumer or any person acting on behalf of the consumer, an accurate statement of the full amount required to pay the obligation in full as of a specified date." 73 Fed. Reg. 1672, 1703 (Jan. 9, 2008).

15. The Board expressed concern regarding

> the misalignment of incentives between consumers, servicers, and investors. Servicers contract directly with investors, and consumers are not a party to the contract. The investor is principally concerned with maximizing returns on the mortgage loans. So long as returns are maximized, the investor may be indifferent to the fees the servicer charges the borrower. Consumers do not have the ability to shop for servicers and have no ability to change servicers (without refinancing). As a result, servicers do not compete in any direct sense for consumers. Thus, there may not be sufficient market pressure on servicers to ensure competitive practices.
>
> [S]ervicers may not timely credit, or may misapply, payments, resulting in improper late fees. The Board is also concerned about the transparency of servicer fees and charges, especially because consumers may have no notices of such charges prior to their assessment. Consumers may be faced with charges that are confusing, excessive, or cannot easily be linked to a particular service. In addition, servicers may fail to provide payoff statements in a timely fashion...

*Id*. at 1702.

16. The inverse of the Board's reasoning is equally true: just as servicers have an incentive to disclose fees and charges in the least transparent method possible, they are equally disinclined to notify consumers of the availability of funds, such as insurance payments, which may be credited in their favor.

17. In 2010, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 12 U.S.C. § 5301 et seq., which established the Consumer Financial Protection Bureau ("CFPB"). As part of the Act, it amended 15 U.S.C. § 1639 to

empower the CFPB, in place of the Board, to "prohibit acts or practices in connection with . . . mortgage loans that the Bureau finds to be unfair, deceptive, or designed to evade the provisions of this section[.]" 15 U.S.C. § 1639(p)(2).

18. The Board promulgated regulations concerning payoff statements, which exist today in Regulation Z:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date.

12 C.F.R. 1026.36(c)(3).

19. Violators of TILA are liable, among other things, for:

   a. any resultant actual damages pursuant to 15 U.S.C. § 1640(a)(1));

   b. statutory damages;

      i. in individual actions not less than $400 or greater than $4,000 pursuant to 15 U.S.C. § 1640(a)(2)(B),

      ii. in class actions, the lesser of $1 million or 1 per centum of the net worth of the creditor pursuant to 15 U.S.C. § 1640(a)(2)(b); and

   c. costs and attorneys' fees pursuant to 15 U.S.C. § 1640(a)(3).

## NEW JERSEY CONSUMER FRAUD ACT ("NJCFA")

20. The NJCFA was enacted to protect consumers against fraudulent and unconscionable practices in the sale of consumer goods and services. The Legislative intent behind the NJCFA's passage shows a clear intent that its provisions are to be applied broadly in order to accomplish its remedial purpose – the elimination of consumer fraud.

21. The NJCFA makes unlawful any "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise,

misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate." N.J. Stat. § 56:8-2.

22. To state a claim under NJCFA, a plaintiff must allege (1) unlawful conduct by a defendant, (2) an ascertainable loss on the part of the plaintiff, and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss. *Matera v. M.G.C.C. Group, Inc.*, 952 A.2d 525, 530 (N.J. Super. Ct. Law Div. 2007).

23. An affirmative act, such as unconscionable commercial practices or deception, constitutes a violation of the NJCFA. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 365 (N.J. 1997). Further, as a result of Defendant violating federal law, Specifically, RESPA, TILA, Regulation X, and Regulation Z, the actions of Defendant set forth in this Complaint herein constitute an unconscionable commercial act.

24. In a claim based on an affirmative act or representation, neither an intent to deceive by a defendant or actual reliance by the plaintiff need to be shown. Rather, a plaintiff must plead a causal nexus between the alleged act of consumer fraud and the damages sustained. *Gennari*, 691 A.2d at 365.

25. Once a plaintiff proves both unlawful practices under NJCFA and the resulting ascertainable loss, an award of treble damages and attorneys' fees is mandatory. *Cox v. Sears Roebuck & Co.*, 347 A.2d 454, 464–65 (N.J. 1994).

## GENERAL FACTUAL ALLEGATIONS

26. PHH is a mortgage loan servicer that regularly services mortgage loans throughout the United States.

27. The loan servicer's duties and obligations are clearly defined by the CFPB when the loan is either serviced by the lender itself or sold to third-party servicer entities such as PHH.

28. In its role as mortgage loan servicer, PHH was responsible for preparation of items concerning the Note and Mortgage including, but not limited to, preparing, and sending monthly statements, accounting for credit and debits on the Note, calculating, collecting, and disbursing escrow amounts, sending notices, overseeing the judicial foreclosure process including providing information for the same, and calculating payoff figures and transmitting payoff figures.

29. Additionally, as part of its loan servicing responsibilities, PHH regularly issues loan payoff statements, collects loan payoff payments, drafts, and processes the paperwork necessary to release the mortgage lien once payment has been satisfied.

30. The documents necessary to be filed, once a mortgage has been paid off or satisfied, to release the mortgage are created by PHH utilizing its mortgage servicing software programs and the databases contained therein as part of PHH's normal servicing functions.

31. Moreover, as stated, PHH has an obligation to prepare "payoff statements" that set forth the correct amounts required to fully satisfy all obligations secured by the loan serviced by Defendant. Payoff statements include information on fees owed, including a recording fee, amongst other items.

32. Payoff Statements generated by PHH are governed by Federal rules and regulations and their drafting is set forth by PHH policies and procedures, ultimately being uniform in composition and form.

33. PHH includes on its uniform payoff statement a charge for "Recording Fee." According to the payoff statement, this "Recording Fee" is the cost PHH supposedly pays to the county recorder's office to record the satisfaction of mortgage, releasing the lien from the property PHH is servicing.

34. In addition to the county "Recording Fee," PHH frequently includes on its payoff statement a charge for "Lien Release Fee." According to the payoff statement, this "Lien Release Fee" is part of the costs PHH supposedly pays to the county recorder's office to record the satisfaction of mortgage, releasing the lien from the property PHH is servicing. PHH charges borrowers $15.00 for this "Lien Release Fee." However, the only fees counties charge to release a mortgage lien are contained within the recording fees, and the charge for the "Lien Release Fee" is not imposed by the county in which the property encumbered by the mortgage is located, contrary to PHH's representations to borrowers.

35. Servicers are only allowed to charge for government recording fees actually charged by the county recorder's office and are not allowed to charge a fee for the preparation of the mortgage satisfaction documents, unless otherwise allowed by law.

36. Thirty-six jurisdictions, including Alabama, Arizona, Arkansas, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Mississippi, Montana, Nebraska, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, do not allow by law for lenders or servicers to charge any fees, associated with the preparation and filing of the satisfaction of mortgage, other than actual governmental recording fees.

37. On or about September 24, 2005, Susan Booth took out a mortgage (the "Booth Mortgage"), secured by the Property for a principal amount of $155,000.

38. On or about February 20, 2022, Plaintiff Brad Dyson as Successor in Interest to his mother Susan Booth requested a payoff statement from PHH for the purposes of learning the amount necessary to pay off the Booth Mortgage.

39. On February 23, 2022, PHH knowingly, willfully, and intentionally transmitted a payoff statement concerning the Booth Mortgage to Plaintiff Dyson, a copy of which is attached as Exhibit "A." The above-mentioned payoff statement was received by Plaintiff Dyson from PHH.

40. The payoff statement states that "A Lien Release Fee and Recording Fee are the costs charged by the county in which the property is located to record a lien release as allowed pursuant to the terms of the security instrument. A Lien Release Fee and Recording Fee will only be charged when the lien is paid in full and as allowed by applicable law. A Lien Release Fee and Recording Fee will be assessed in the amount of the actual cost which may vary at the time of recording."

41. Within the payoff statement's total fees, PHH knowingly, intentionally, and willfully included charges for "Lien Release Fee" in the amount of $15.00.

42. Plaintiff Dyson submitted and paid the total amount, including the improper Lien Release Fee, required by PHH to pay off the Booth Mortgage as demanded by PHH in February 23, 2022 payoff statement.

43. Plaintiff Dyson's property is located in Maricopa County, Arizona.

44. Like the Thirty-Six jurisdiction identified above, Arizona law does not allow a lender or servicer to charge for the preparation of the documents to record the satisfaction of mortgage or release of lien, and only requires that actual governmental recording fees be paid to the county recorder's office. *See* Arizona Revised Statutes Title 33 § 33-707.

45. The cost to record a lien release in Maricopa County, Arizona is $30.00 regardless of the amount of pages recorded. *See* MARICOPA COUNTY RECORDER – COUNTY CLERK FEE SCHEDULE.[1]

46. PHH improperly overcharged Plaintiff Dyson $33.00 as a "Recording Fee", which is more than the actual cost to record a lien release in Maricopa County, Arizona. PHH retained the overcharge.

47. Moreover, PHH also intentionally misrepresented that the $15.00 Lien Release Fee is charged by the county and mandated by the county to record the release of lien.

48. Thereafter, on December 19, 2022, through counsel, Plaintiff sent a Notice of Error ("NOE") pursuant to RESPA and Regulation X disputing the validity of the $15.00 Lien Release Fee charged to Plaintiff.

49. On January 10, 2023, PHH responded to Plaintiff's NOE disputing the validity of the Lien Release fee, and again PHH misrepresented that this fee was a charge incurred by the county, parroting the language from the payoff statement.

50. In actuality, this "Lien Release Fee" is nothing but a junk fee PHH is charging borrowers to pocket for extra profit for itself, on services it is obligated to perform and for which it is forbidden to charge for by law.

**CLASS ACTION ALLEGATIONS**

51. Plaintiff brings this suit as a class action on behalf of himself and others similarly situated pursuant to Federal Rules of Civil Procedure, rules 23(a), 23(b)(2), and/or 23(b)(3) on behalf the Class as defined as follows:

---

[1] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://recorder.maricopa.gov/pdf/NEW%20fee%20update%20with%20fee%20schedule.pdf

> All persons who have or had mortgages serviced by Defendant within the any of the following thirty-six jurisdictions: Alabama, Arizona, Arkansas, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Mississippi, Montana, Nebraska, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, (i) who received or are entitled to receive payoff statements; and (ii) who received mortgage payoff statements from Defendant which charged a "Lien Release Fee."

52. Plaintiff reserves the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

53. Excluded from the Class are Defendant, and Defendant's parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all mortgagors who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case should be assigned.

54. Under Fed. R. Civ. P. 23(a)(1), the proposed class is made up of at thousands of individuals, the joinder of whom are impracticable except by means of a class action. Indeed, Consumer reports describe PHH as focusing solely on home loans servicing $226 billion in 2015. The disposition of the claims in a class action will benefit both the parties and the Court. The exact number of class members can be determined through discovery and review of PHH's business records.

55. The proposed class is ascertainable because it is defined by reference to objective criteria. In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by PHH.

56. In conformance with Fed. R. Civ. P. 23(a)(2), all Class Members' claims (including Plaintiff's) are unified in that they arise from the same improper charging of a Lien Release Fee that is prohibited by law, arising out of materially identical circumstances and common course of

11

conduct of PHH; i.e. PHH misleading Plaintiff and Class Members as to the propriety and source of that fee on payoff statements. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the proposed class.

57. Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiff is a member of the Class. His claims are typical of all other Class Members. All Class Members' claims are unified, as all were victims of the same charging practices.

58. Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff will adequately represent the class because he has interests in common with the proposed Class Members and he has retained attorneys who are experienced in class action litigation.

59. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

60. Pursuant to Fed. R. Civ. P. 23(b)(3), there is a well-defined community of interest in the questions of law and fact involving and affecting the class to be represented by Plaintiff. Common questions of law and/or fact predominate over any questions affecting only individual members of the class. Common questions include, but are not limited to, the following:

   a. Whether Defendant's practice of charging a Lien Release Fee where it is prohibited by law violates TILA and its implementing regulations;

   b. Whether Defendant's practice of charging a Lien Release Fee where it is prohibited by law violates N.J. Stat. § 56:8-1, *et seq.*

   c. Whether Defendant's representations regarding the source of the Lien Release Fee is deceptive and in violation N.J. Stat. § 56:8-1, *et seq*

   d. Whether Plaintiff and Class Members are entitled to statutory damages under the

       TILA and Regulation Z and the amounts thereof;

e. Whether Plaintiff and Class Members are entitled to statutory damages under N.J. Stat. § 56:8-1, *et seq*. and the amounts thereof;

f. Whether Plaintiff and Class Members are entitled to recover statutory damages under TILA and Regulation Z and the amounts thereof;

g. The proper measure of disgorgement and/or actual and/or punitive damages and/or restitution, as well as other recovery to the class, including fees and costs.

h. Whether Defendant fails to provide homeowners with accurate balance information; and

i. The nature and extent of any other relief that should be provided.

61. Class certification under Fed. R. Civ. P. 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it difficult for the Class Members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

62. Class action is also appropriate as Congress intended class actions to be a principal enforcement mechanism under TILA *See* 15 U.S.C. § 1640(a)(2)(B) and NJCFA as New Jersey courts have endorsed the use of class actions in the context of NJCFA where consumers seek to redress a common injury under circumstances that would make individual actions uneconomical to pursue. *See* 15 U.S.C. § 1640(a)(2)(B).

63. Class Members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

## COUNT I
### (Violation of Truth In Lending Act and Regulation Z)

64. Plaintiff repeats the allegations in the above paragraphs as if fully set forth herein.

65. 15 U.S.C. § 1639g of TILA and 12 C.F.R. § 1026.36(c)(3) require PHH to provide borrowers, upon request, with an accurate statement of the total amount required to pay off the loan by a specified date.

66. Defendant sent to Plaintiff and Class Members payoff statements that included a $15.00 "Lien Release Fee" where including that fee was prohibited by law.

67. Defendant violated TILA and Regulation Z by providing Plaintiff and Class Members with payoff statements that included a charge for a "Lien Release Fee", where it is prohibited by law, and further misrepresented the validity and/or source of the Lien Release Fee in the payoff statement. These acts have the effect of overstating Plaintiff and Class Members' obligations under the Mortgage and thus constitutes an "[in]accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full" and an "[in]accurate payoff balance." 15 U.S.C. § 1639g; 12 C.F.R. § 1026.36(c)(3).

68. Plaintiff and Class Members made payments to PHH based upon the inaccurate payoff statements and suffered out-of-pocket losses as result of PHH's violations of TILA.

69. As a result of these violations, Plaintiffs and Class Members are entitled to actual damages, statutory damages, costs, and attorneys' fees pursuant to TILA and Regulation Z.

## COUNT II
### (Violation of the New Jersey Consumer Fraud Act)

70. Plaintiff repeats the allegations in the above paragraphs as if fully set forth herein.

71. Plaintiff and Class Members are "persons" within the meaning of N.J. Stat. § 56:8-1(d).

72. Defendant's conduct alleged herein constitutes a "sale" within the meaning of N.J. Stat. § 56:8-1(e).

73. Defendant's mortgage servicing services constitute "merchandise" within the meaning of N.J. Stat. § 56:8-1(c).

74. Defendant's practices relating to charging a Lien Release Fee where it is prohibited by law, and misrepresenting the validity and source of the fee, in its payoff statements constitute an "unconscionable commercial practice, deception, fraud . . . [and] misrepresentation" in connection with its mortgage servicing as defined by N.J. Stat. § 56:8-2.

75. Further, as a result of Defendant's violations of federal law — TILA and Regulation Z — the actions of the Defendant complained herein constitute an unconscionable commercial act.

76. As a result of Defendant's practices, Plaintiffs and Class Members have suffered an ascertainable loss that they otherwise would have saved if Defendant had not charged the impermissible "Lien Release Fee."

77. As redress for Defendant's repeated and ongoing violations of NJCFA, Plaintiff and the Class Members are entitled to treble damages pursuant to N.J.S.A. § 56:8-19, as well as court costs and reasonable attorneys' fees in connection with this action.

## JURY DEMAND

78. Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all members of the Class, pray for relief as follows:

   a. Certifying Plaintiff's claims for class treatment under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as counsel for the Classes;

    b.  For an order awarding compensatory damages on behalf of Plaintiff and the Classes in an amount to be proven at trial;

    c.  Awarding statutory damages pursuant to 15 U.S.C. §§ 1640(a)(1), 1640(a)(2)(A)(iv), and § 1640(a)(2)(B), together with pre-judgment interest;

    d.  For judgment for Plaintiff and the Class on their claims in an amount to be proven at trial, for compensatory damages caused by Defendant's unfair or deceptive practices, for exemplary damages to each Class Member for each violation;

    e.  Awarding treble damages pursuant to N.J. Stat. § 56:8-19

    f.  For an order enjoining Defendant from continuing its unfair, unlawful, and/or deceptive practices, and any other injunctive relief as may appear necessary and appropriate;

    g.  For pre-judgment and post-judgment interest as provided for by law or allowed in equity;

    h.  Awarding reasonable attorneys' fees and costs, including experts' fees; and,

    i.  Granting such other and further relief, in law or equity, as this Court may deem appropriate and just.

Dated: February 8, 2023            **SALTZ MONGELUZZI & BENDESKY, P.C.**

                                 By:    */s/ Patrick Howard*
                                        Patrick Howard (NJ ID #02280-2001)
                                        8000 Sagemore Drive, Suite 8303
                                        Marlton, NJ 08053
                                        Tel: (856) 751-0868
                                        phoward@smbb.com

                                        *Counsel for Plaintiff and the Class*

                                        Of Counsel:
                                        Scott David Hirsch
                                        **SCOTT HIRSCH LAW GROUP**
                                        (*Pro Hac Vice* Forthcoming)
                                        6810 N. State Road 7
                                        Coconut Creek, FL 33073
                                        Tel: (561) 569-7062
                                        scott@scotthirschlawgroup.com

Daniel E. Gustafson
David A. Goodwin
**GUSTAFSON GLUEK**
(*Pro Hac Vice* Forthcoming)
120 South 6th Street, Ste. 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com

Jessica L. Kerr
**THE ADVOCACY GROUP**
(*Pro Hac Vice* Forthcoming)
111 NE 1st Street, 8th Floor #8517
Miami, FL 33132
Telephone: (954) 282-1858
Facsimile: (954) 282-8277
jkerr@advocacypa.com

17